IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANGEL McCLAIN,                    )
                                  )
        Plaintiff,                )
                                  )
v.                                )   CIVIL ACTION NO. 16-0547-MU
                                  )
NANCY A. BERRYHILL,               )
Acting Commissioner of Social     )
Security,[1]                      )
                                  )
        Defendant.                )

## MEMORANDUM OPINION AND ORDER

Plaintiff Angel McClain brings this action, pursuant to 42 U.S.C. §§ 405(g),

seeking judicial review of a final decision of the Commissioner of Social Security

("the Commissioner") denying her claim for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act ("the Act"). The parties have consented to

the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. §

636(c), for all proceedings in this Court. (Doc. 30 ("In accordance with the

provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case

consent to have a United States Magistrate Judge conduct any and all

proceedings in this case, … order the entry of a final judgment, and conduct all

post-judgment proceedings.")). *See also* Doc. 32. Upon consideration of the

administrative record, McClain's brief, the Commissioner's brief, and oral

argument presented at the August 15, 2017 hearing before the undersigned

_____
[1] Nancy A. Berryhill is the Acting Commissioner of Social Security.  Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g),
Nancy A. Berryhill is substituted as the Acting Commissioner in lieu of Social
Security Administration, Commissioner, as the defendant in this action.

Magistrate Judge, it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

## I.  PROCEDURAL HISTORY

McClain applied for DIB, under Title II of the Act, 42 U.S.C. §§ 423 - 425, on December 11, 2012, alleging disability beginning on August 20, 2012. (Tr.171-72). Her application was denied at the initial level of administrative review on February 7, 2013. (Tr. 115-17). On March 14, 2013, McClain requested a hearing by an Administrative Law Judge (ALJ). (Tr. 122-23). After a hearing was held on May 22, 2014, the ALJ issued an unfavorable decision finding that McClain was not under a disability from the date the application was filed through the date of the decision, August 25, 2014. (Tr. 51-63). McClain appealed the ALJ's decision to the Appeals Council, and, on March 28, 2016, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4, 22).

After exhausting her administrative remedies, Denton sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g). (Doc. 1). The Commissioner filed an answer and the social security transcript on November 29, 2016. (Docs. 12, 13). Both parties filed briefs setting forth their respective positions. (Docs. 16, 24, 25). Oral argument was held before the undersigned

---

[2] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 30. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

Magistrate Judge on August 15, 2017. (Doc. 31). The case is now ripe for decision.

## II.  CLAIMS ON APPEAL

McClain alleges that the ALJ's decision to deny her benefits is in error for the following reasons:

1.  The ALJ erred in failing to give proper weight to her treating physician's opinion;

2.  The ALJ failed to assess the intensity and persistence of her symptoms pursuant to SSR 16-3p;

3.  The ALJ failed to state adequate reasons for her credibility finding;

4.  The ALJ's finding in her residual functional capacity (RFC) evaluation that McClain can perform light work is not supported by substantial evidence; and

5.  The Appeals Council erroneously failed to review new medical evidence that was submitted by McClain after the date of the ALJ's Decision.

(Doc. 16 at p. 3).

## III. BACKGROUND FACTS

McClain was born on January 11, 1967, and was almost 46 years old at the time she filed her claim for benefits. (Tr. 165). McLain initially alleged disability due to right shoulder tendonitis, iron deficiency, sciatica and lower back pain, and anxiety. (Tr. 203). She graduated from high school in regular classes in 1985 and has taken some college classes. (Tr. 74, 204). She worked as a seamstress at a clothing factory for over ten years and as a lunch room worker at a school from 2001 until November 7, 2012. (Tr. 204, 219). In her Function

Report, McClain stated that her daily activities consist of taking her medication, eating, watching television, reading her Bible and praying. (Tr. 227). She stated that her daughter cooks for her and her daughter and son do household indoor and outdoor chores for her because it hurts to do these things or she doesn't feel like doing them. (Tr. 229-30). She stated that she is able to drive but only goes out to doctor's appointments and to shop. (Tr. 88, 230). She stated that she goes to church when she can. (Tr. 231). She is able to pay bills, count change and handle a saving account. (*Id*.). After conducting a hearing, the ALJ made a determination that McClain had not been under a disability during the relevant time period, and thus, was not entitled to benefits. (Tr. 51-63).

## IV. ALJ'S DECISION

After considering all of the evidence, the ALJ made the following findings that are relevant to the issues presented in her August 25, 2014 decision:

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never use her right hand for pushing and/or pulling of hand controls. She can never reach overhead with the right upper extremity. She can frequently reach in other directions, handle and finger with the right upper extremity. She can occasionally climb ramps and stairs. She can never climb ladders and scaffolds. She can frequently stoop, kneel, crouch, and crawl. She can never work at activities involving unprotected heights and hazardous moving mechanical parts. She should avoid concentrated exposure to extreme cold. She should avoid frequent exposure to dust, fumes, gases, and other pulmonary irritants. I further find that the claimant is limited to simple tasks. She can occasionally interact with the public. Contact with supervisors and coworkers should be brief and casual.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

\* \* \*

In connection with her application for disability benefits, the claimant provided responses to a Disability Report. She reported that she was limited in her ability to work due to severe tendonitis and muscle spasms of the right shoulder, iron deficiency, sciatica and lower back pain, and anxiety. She stated that she stopped working on November 7, 2012, because of her condition (Exhibit 3E).

The claimant completed a Function Report on December 14, 2012. She reported that she lives in a house with family. From the time she wakes up until going to bed, she takes her medication, eats a little, sometimes watches television, reads her Bible, and prays. She does not take care of anyone else and she does not take care of pets. Her condition affects her sleep because she hurts all night due to lying on her back or shoulder. It hurts to move around to dress. It hurts to move in the shower. It hurts to do her hair, so her daughter does it. She has no problem with shaving, feeding herself or using the toilet. She does not need special reminders to take care of personal needs and grooming. She does not need help or reminders taking medicine. She does not prepare her own meals [sic] her daughter prepares the meals. Her daughter and son do the household work for her now. She does not do house or yard work because it hurts for her to do them. She only goes outside if she has a doctor's appointment. When going out, she travels by riding in a car. She can go out alone and she does drive. She shops by phone for kid's clothes once every 4 to 5 months or as needed. She is able to pay bills, count change, and use a checkbook or money order. For hobbies and interests, she listed watching television when she is not sleeping. Her medication puts her to sleep. She does not spend time with others. She goes to church when she can. Sometimes it makes her feel bad being around family, friends, neighbors, or others and she wants to stay to herself. She likes being by herself. Her condition affects lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration, following instructions, using hands, and getting along with others. She can walk for about 50 yards before needing to stop and rest. She will need to rest for about

an hour before she can resume walking. She can pay attention for about one hour. She cannot follow written or spoken instructions "good." She is never around authority figures. She does not handle stress or changes in a routine well. She wears glasses (Exhibit 8E).

Robert Estock, M.D., a State Agency psychiatrist, completed a Psychiatric Review Technique form on February 6, 2013. He opined that the claimant was mildly limited in restriction of activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace. He found no episodes of decompensation, each of extended duration. Dr. Estock concluded that based on the documented findings the claimant was not disabled (Exhibit IA).

An MRI of the lumbar spine taken at Open MRI of Auburn/Opelika on January 12, 2011, was normal (Exhibit IF).

J. Melburn D. Holmes, M.D., saw the claimant on May 30, 2012. The claimant reported having problems with her partner's children and family. Her nerves were bad and she had never taken any medication for nerves. Dr. Holmes prescribed Klonopin (Exhibit 2F).

Treatment records from Therapy Resources of East Alabama dated August 9, 2012, to September 4, 2012, reveal that the claimant underwent physical therapy two times a week for four weeks for right upper trapezius pain and upper shoulder pain. She was treated with manual therapy, therapeutic exercise, massage, ultrasound, electrical stimulation, and heat packs. On discharge, it was noted that therapy did not give a lot of benefit. Her pain was recurrent (Exhibit 3F).

Dolores Victoria, M.D., with Quality of Life treated the claimant from November 3, 2009, to April 2, 2013, for weight gain, vaginitis, fatigue, anemia, nail fungus in the right big toe, mixed hyperlipidemia, upper respiratory infection, insomnia, benign hypertension, sinusitis, anxiety, right shoulder pain, and pharyngitis. On September 26, 2012, a MRI of the right shoulder revealed moderate tendonitis of the infraspinatus without tear and mild edema of the distal clavicle with slight hypertrophic change of the acromioclavicular joint with a widely patent acromiohumeral interval (Exhibits 4F, 5F, and 10F).

On April 2, 2013, Dr. Victoria wrote the following:

> This letter is in reference to Ms Angel McLain. She has been a patient at this facility since November 2009. She

is healthy, consults and receive [sic] treatments for minor
medical condition. Her annual medical [sic] medical
check up [sic] including blood test were unremarkable.
In July 2012 [sic] she had a severe injury to right
shoulder that is workrelated, [sic] working at the lunch
room at the local elementary school. She had several
office visits and was referred to an orthopedic specialist.
She was diagnosed with Chronic right shoulder rotator
cuff tendinitis and hypertrop of Acromio-Clavicular joint.
No surgical procedure advised and because of
persistence of pain and inability to use her right hand
she will not be able to continue her job. Please assist in
obtaining approval for disability for social security
benefits (Exhibit 13F).

Robert J. McAlindon, M.D., with East Alabama Orthopaedics and
Sports Medicine, treated the claimant from July 26, 2012, to January
10, 2013, for right rotator cuff tendonitis (Exhibits 6F and 8F).

The claimant underwent physical therapy through Therapy
Resources of East Alabama from November 8, 2012, to December
10, 2012. She was treated two times a week for four weeks with
heat packs, electrical stimulation, ultrasound, and therapeutic
exercise (Exhibit 7F).

The claimant was treated at Cheaha Mental Health Center on two
occasions, January 10, 2013, and January 29, 2013. Initially, she
reported, "I want to be happy and put past behind me. I want to see
if medication will help me so I can benefit from counseling." She
stated that she had been sexually, physically and emotionally
abused by her stepfather beginning at age 12. She was given
diagnoses including major depression, recurrent, moderate;
posttraumatic stress disorder; and given a global assessment of
functioning (GAF) score of 55. On the second visit, focus was on the
differences in personality styles that the claimant and her husband
had. On this visit, she was given a GAF of 56 (Exhibit 11F).

On February 13, 2013, the claimant underwent a Nuclear Medicine
Thyroid Uptake and Scan at East Alabama Medical Center, which
was normal. On May 29, 2013, Gwen Cooper, M.D., performed
attempted to place a NovaSure device, but after two attempts with
not getting adequate seal, the procedure was abandoned and a
dilatation and curettage was done instead. On June 13, 2013, the
claimant underwent a transabdominal and transvaginal pelvic

ultrasound, which revealed fibroid uterus with fluid in the endometrial cavity due to menorrhagia (Exhibits 12F, 14F, 15F, 16F, 17F, and 18F).

The claimant was treated at Anniston Dermatology on three occasions from December 2, 2013, to April 8, 2014, for alopecia (Exhibit 19F).

At the hearing, the claimant testified that she was born on January 11, 1967, and she is 47-years old. She is right-handed. She is married with three children ages 27, 24, and 19. She resides in a house with her spouse, 27-year old daughter and 19-year old son. Her spouse does not work. He is disabled. He has vertigo, migraines and back problems. He was hurt at work and is now medically retired. He was in the military and receives VA pay. They do not receive food stamps. She has a driver's license and she drives twice weekly to the store by her home. Her daughter drove her to the hearing. She completed the 12th grade and went to college in 2010 for a few classes, but she did not obtain a degree. She was let go from her job in November due to missing work. She worked in the lunchroom at school. She served breakfast for 200 kids and lunch for 400 kids. Her arm was paralyzed and she missed work. She was allowed to work 2 days a week. Dr. Bob sent her for the MRI. The rotator cuff was messed up. She lifted 10-20 pound cans and carried them 8-10 feet. She has shoulder pain like a toothache. Hydrocodone was prescribed and she also takes Meloxicam for pain. Her medication causes side effects making her sleepy and blurry eyed. The pain has existed for at least two years. In an eight-hour day, she does get up from her chair to the refrigerator. She drops off to sleep due to the medication side effects. She stands to go to the bathroom, go to the kitchen, and to get water. She is up four times a day. She does not get up a lot due to the medication making her woozy. Where she worked was hot in the kitchen and it was cold in the winter in the cooking area. There was no heat except in the dining area. She did not supervise any staff. Her work was stressful. The kids would be rowdy and she would get aggravated. She could not deal with the noise and she was moved to another work area. She has hormone issues and uncontrolled hypertension. She takes steroid medication for her head. She takes muscle relaxers because her muscles tighten up. This medication makes her drowsy. She sits on a couch most of the time. She cannot sit on a bench, because it hurts her back. Her pain level is a "9-10." At times, she aches all the time. She takes her medication to help ease the pain. She does not use a cane. She has foot swelling and she was placed on diuretics. She has to

elevate her legs. She cannot watch an entire movie because she falls asleep. She does not do any crafts. She had to give it up. She attends Mental Health and is prescribed Lorazepam. This mellows her out. She has problems getting along with other people. She stays in her room a lot. She can understand and carry out instructions, but sometimes she forgets. Her concentration is not good. Her daughter does the housework, but she can dry a few dishes. She can walk in the house and in the store. Dust, fumes and gases bother her. She has allergies. She has no problems with her breathing. She feels sleepy with no energy. She takes medication for her thyroid. She is tired a lot. Taking pain medication makes her tired. She takes naps during the day. She takes sleep aids at night. She has to take her medication that calms her. She cannot be out in public a lot. Bending at the waist is a problem due to her sciatic nerve problems. She can stoop and kneel. She does not have stairs to climb and she cannot climb ladders. She does not crawl. The hand on her right side is weak due to her shoulder issues. She does not push. She can twist her wrist and she can open a jar if it is not too tight. She can open a door and button her clothes. She can bathe and dress herself. She does not go out alone, going out causes her emotional problems. She drives twice weekly to the grocery store. Probably ten minutes is the longest she has driven in the past year. She does not take trips. She has not gotten lost when driving. It bothers her to be a passenger in a car. She does not cook. She will go with her daughter to help with the grocery shopping. She can make her bed. She does not do laundry or vacuuming. She can use a telephone. She does not visit family often. She sees her mom maybe once a month and she attends church once a month. She went to two football games for her son's senior year for a short time, but she was too tired and had to leave. She does not like to read. She watches HGTV all the time. She does not keep up with current events. Her hair fell out a year ago and the dermatologist started giving her shots. This was due to her nerves and hormones. The symptoms kept her from working. She had a hysterectomy in October 2013. She had two surgeries. The thyroid medication and hormones have helped her hair to grow back some. When she is on the medication, she is not alert.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The claimant's attorney asserted that the claimant was disabled due to a combination of impairments, pain from shoulders and a mental problem. The claimant testified that her arm was paralyzed and she missed work; however, there is not any objective evidence showing that her arm was paralyzed. She also testified that she attends Mental Health, yet the last time she had only been to Mental Health on two occasions and the last time she was seen there was on January 29, 2013. She testified that she drives twice weekly to the grocery store, but then she said probably ten minutes is the longest she has driven in the past year.

On January 22, 2013, the claimant was seen at Quality of Life for cold symptoms and left shoulder pain. Reportedly, the pain in her left shoulder was relieved with prescription pain medication and over-the-counter medication. On examination, she had normal range of motion, muscle strength and stability in all extremities with no pain on inspection (Exhibit 10F).

Treatment notes from Dr. McAlindon dated November 8, 2012, shows that a MRI of the right shoulder rotator cuff tendonitis was negative. Thought not yet at a 100%, records of November 29, 2012, show that the claimant had right rotator cuff tendonitis and she had gone through a range of motion rehab program and was feeling better. On examination, she had full range of motion about the shoulder passively. Actively, the rotator cuff muscle strength was still a bit weak to supraspinatus tendon testing and external rotation. There was no sign of impingement and no tenderness over the biceps tendon. On January 10, 2013, Dr. McAlindon reported that the claimant was going through a range of motion rehab program and she was doing better. On examination, she had full passive and active range of motion about the shoulder. The rotator cuff strength was much improved and impingement signs were nearly absent (Exhibits 6F and 8F).

Physical therapy notes from Therapy Resources of East Alabama dated November 29, 2012, show that the claimant reported, "I had taken pills for my shoulder and it felt better" (Exhibit 7F).

I give little weight to Dr. Estocks opinion of the claimant suffering from only limitations with mental functioning. Although Dr. Estock was the Agency's reviewing physician, his opinion was based on the evidence available at the time and additional evidence was received into the record after he made his assessment. Thus, based on all of the evidence of record, I find the claimant to suffer from limitations than that that was assessed by Dr. Estock.

I also give little weight to Dr. Victoria who opined that because of persistence of pain and inability to use her right hand the claimant would not be able to continue her job. While she may not be able to perform her past work, her ability to function has not been so severely eroded as to preclude all work activity. Orthopedic records of January 2013 show no signs of impingement or tenderness over the biceps. She was told to continue an exercise program and over the counter medications. Furthermore, at the hearing, the claimant repeatedly lifted her arms and hands to explain answers. I specifically note that as she talked about her hair falling out, she repeatedly lifted her right upper extremity above her shoulder to her head with no facial grimacing or any other indication of pain or difficulty.

As for her menstrual difficulties, anemia and hypertension, Dr. Victoria did not mention them in her statement regarding her opinion of the claimant being disabled. In addition, there is no evidence of any ongoing treatment of such, end organ damage [sic] or referral to a specialist since June 2013.

Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine in nature. The description of the symptoms and significant limitations, which the claimant has provided throughout the record, has generally been inconsistent and unpersuasive. Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet, a review of the record in this case reveals no restrictions recommended by the treating doctor or by any other practitioner. The claimant has no neurological deficits, muscle atrophy, or significant weight loss, generally associated with protracted pain, at a severe level.

In summary, based on a close review of the medical evidence of record, as well as all pertinent testimony at the hearings, the undersigned finds that the preponderance of the most credible and convincing evidence contained in the record has not supported the claimant's allegations of totally incapacitating symptoms. The claimant's statements regarding the severity, frequency and duration of her impairments have been overstated.

(Tr. 55-61).

## V. DISCUSSION

Eligibility for DIB benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

As set forth above, McClain has asserted five grounds in support of her argument that the Commissioner's decision to deny her benefits is in error. The Court will address McClain's contentions in the order presented.

## A. <u>ALJ Erred by Failing to Give Proper Weight to Dr. Victoria's Opinion</u>

McClain asserts that the ALJ erred in according only little weight to the opinion of Dr. Victoria, one of her treating physicians. The Commissioner asserts that the ALJ provided valid reasons for the weight accorded to Dr. Victoria's

opinion, that her finding is supported by substantial evidence, and that the ALJ's evaluation of her opinion is entitled to deference.

The relevant social security regulations provide that medical opinions are weighed by considering the following factors: 1) whether the source of the opinion examined the claimant; 2) whether the source treated the claimant and, if so, a) the length of the treatment relationship and the frequency of examination and b) the nature and extent of the treatment relationship; 3) the supportability of the opinion with relevant evidence and by explanations from the source; 4) the consistency of the opinion with the record as a whole; 5) whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and 6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6); *see also Nichols v. Comm'r, Soc. Sec. Admin.*, 679 F. App'x 792, 797 (11th Cir. 2017) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)) (stating that "[i]n determining how much weight to give a medical opinion, the ALJ considers such factors as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the doctor's specialization").

In the instant case, the ALJ provided an extensive review of the medical evidence in her Decision. Based on this extensive review of the records and testimony, the ALJ accorded "little weight" to Dr. Victoria's opinion that "because of persistence of pain and inability to use her right hand [McClain] will not be able to continue her job." (Tr. 61). For several reasons, the Court finds that the ALJ's assessment of this statement by Dr. Victoria was supported by substantial

evidence.

First, the Court notes that, because the finding of whether a claimant is disabled from doing gainful work is an administrative finding that is reserved to the Commissioner, a doctor's opinion on that issue is not entitled to controlling weight or given special significance. *See Lowery v. Berryhill*, Civ. A. No. 4:16-cv-00913-AKK, 2017 WL 1491274, at *3 (N.D. Ala. Apr. 26, 2017) (citing *Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 833, 834 (11th Cir. 2017) ("the determination of whether an individual is disabled is reserved to the Commissioner, and no special significance will be given to an opinion on issues reserved to the Commissioner.")). In addition, a physician's opinion as to a claimant's ability to work is not entitled to recognition from an ALJ if the opinion is not supported by or consistent with the totality of the evidence. *Id*. The ALJ found, in this case, that Dr. Victoria's opinion was not consistent with the totality of the evidence. (Tr. 61). For example, as noted by the ALJ, although McClain "may not be able to perform her past work, her ability to function has not been so severely eroded as to preclude all work activity." The ALJ noted: "Orthopedic records of January 2013 show no signs of impingement or tenderness over the biceps. She was told to continue an exercise program and over the counter medications. Furthermore, at the hearing, the claimant repeatedly lifted her arms and hands to explain answers. I specifically note that as she talked about her hair falling out, she repeatedly lifted her right upper extremity above her shoulder to her head with no facial grimacing or any other indication of pain or difficulty." (*Id.*). She further noted that McClain's treatment had been "essentially routine in

nature" and that "no restrictions [had been] recommended by the treating doctor or by any other practitioner." Finally, the ALJ noted that McClain "has no neurological deficits, muscle atrophy, or significant weight loss, generally associated with protracted pain, at a severe level."

"In assessing whether a claimant is disabled, an ALJ must consider the medical opinions in a case record *together with the rest of the relevant evidence received.*" *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 870 (11th Cir. 2016) (citing 20 C.F.R. § 404.1527(b)) (emphasis added). Although the opinions of treating physicians are generally entitled to substantial or considerable weight, the ALJ does not have to give a treating physician's opinion considerable weight if good cause is shown to the contrary. *See Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit "has concluded 'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41. In this case, substantial evidence supports the ALJ's finding that Dr. Victoria's opinion concerning McLain's ability to work was not in line with her own objective findings or the record as a whole.

## B.  ALJ Failed to Assess the Intensity and Persistence of McClain's Symptoms Pursuant to SSR 16-3p

McLain argues that her claim should be remanded because the ALJ failed to assess the intensity and persistence of her symptoms pursuant to SSR 16-3p, which became effective on March 28, 2016, almost two years after the ALJ decided her case. (Doc. 16 at p.15). In support of this contention, McLain argues

that the rule modification is retroactive. (*Id*). This claim fails because it is contrary to Eleventh Circuit law. In *Green v. Social Security Administration, Commissioner,* No. 16-16272, 2017 WL 3187048, *4 (11th Cir. July 27, 2017), the Court held that SSR 16-3p does not apply retroactively.

## C.  ALJ Failed to State Adequate Reasons for Her Credibility Finding

In her decision, the ALJ found that McClain's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible for the reasons explained in this decision." (Tr. 60). For example, the ALJ noted that McClain "testified that her arm was paralyzed and she missed work; however, there is not any objective evidence showing that her arm was paralyzed." (*Id*.). She also noted that McClain "testified [at the May hearing] that she attends Mental Health, yet … she had only been to Mental Health on two occasions and the last time she was seen there was on January 29, 2013." (*Id*.). The ALJ also discussed how the objective medical findings and statements made to her doctor's did not support the severe limitations in activities testified to by McClain. The ALJ pointed out the following:

> On January 22, 2013, the claimant was seen at Quality of Life for cold symptoms and left shoulder pain. Reportedly, the pain in her left shoulder was relieved with prescription pain medication and over-the-counter medication. On examination, she had normal range of motion, muscle strength and stability in all extremities with no pain on inspection (Exhibit 10F).

> Treatment notes from Dr. McAlindon dated November 8, 2012, shows that a MRI of the right shoulder rotator cuff tendonitis was negative. Thought not yet at a 100%, records of November 29, 2012, show that the claimant had right rotator cuff tendonitis and she had gone through a range of motion rehab program and was feeling better. On examination, she had full range of motion about the shoulder passively. Actively, the rotator cuff muscle

strength was still a bit weak to supraspinatus tendon testing and external rotation. There was no sign of impingement and no tenderness over the biceps tendon. On January 10, 2013, Dr. McAlindon reported that the claimant was going through a range of motion rehab program and she was doing better. On examination, she had full passive and active range of motion about the shoulder. The rotator cuff strength was much improved and impingement signs were nearly absent (Exhibits 6F and 8F).

Physical therapy notes from Therapy Resources of East Alabama dated November 29, 2012, show that the claimant reported, "I had taken pills for my shoulder and it felt better" (Exhibit 7F).

\* \* \*

Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine in nature. The description of the symptoms and significant limitations, which the claimant has provided throughout the record, has generally been inconsistent and unpersuasive. Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet, a review of the record in this case reveals no restrictions recommended by the treating doctor or by any other practitioner. The claimant has no neurological deficits, muscle atrophy, or significant weight loss, generally associated with protracted pain, at a severe level.

(Tr. 60, 61).

After evaluating the evidence and testimony, the ALJ concluded:

In summary, based on a close review of the medical evidence of record, as well as all pertinent testimony at the hearings, the undersigned finds that the preponderance of the most credible and convincing evidence contained in the record has not supported the claimant's allegations of totally incapacitating symptoms. The claimant's statements regarding the severity, frequency and duration of her impairments have been overstated.

(Tr. 61).

McClain contends that the ALJ failed to state adequate reasons for finding her not entirely credible. However, she does not support her contention with any specific examples of how the ALJ erred. As set forth above, the ALJ provided several reasons for discounting McClain's allegations concerning the extent of her disability. Her argument that the ALJ incorrectly assessed her credibility fails because she ignores the reasons the ALJ provided for discounting her allegations of disability and the evidence supporting those reasons. The ALJ concluded that McClain's complaints of disabling symptoms were not entirely credible because they were inconsistent with 1) other evidence of record, including the medical records of Dr. McAlindon and Dr. Victoria; 2) her lack of treatment and long gaps in treatment for allegedly disabling mental impairments; 3) her conservative course of treatment; 4) her normal or generally normal physical and mental examination findings; 5) the lack of imaging studies supporting her complaints; and 6) her statements to doctors that medication relieved her symptoms. (Tr. 55-61).

"A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Davis v. Astrue*, 346 F. App'x 439, 440 (11th Cir. 2009) (quoting *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). This is so even if some of the reasons for questioning the claimant's credibility stated by the ALJ are suspect. *See id.* at 441 (reversing the District Court's reversal of the ALJ's decision denying benefits because it found that the inconsistencies between the objective medical findings and the claimant's subjective complaints of pain, which were pointed out in the

ALJ's decision, constituted substantial evidence supporting the ALJ's determination). The Court finds that the conclusion reached by the ALJ that McClain was not entirely credible was supported by substantial evidence and was not in error.

**D.  ALJ's Finding that McClain Can Perform Light Work**

McClain argues that the ALJ's finding in her residual functional capacity (RFC) evaluation that McClain can perform light work is not supported by substantial evidence. A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. It represents ***the most, not the least***, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). The RFC assessment is based on "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those which are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. Similarly, if the evidence does not show a limitation or restriction of a specific functional capacity, the ALJ should consider the claimant to have no limitation

with respect to that functional capacity. Id. at *3. The ALJ is exclusively responsible for determining an individual's RFC. 20 C.F.R. § 404.1546(c).

In this case, the ALJ discussed the medical evidence, including the weight accorded to the medical opinion evidence and the grounds therefor. The ALJ also described the information provided by McClain in her Function Report and at the hearing concerning her limitations and activities, and she explained her reasons for finding that McClain was not entirely credible. Even with the finding that McClain was not entirely credible, the ALJ included limitations in the RFC which clearly went beyond those limitations supported only by the medical evidence. McClain has not pointed to any specific finding in the RFC that was not supported by evidence. The Court finds that the assessment made by the ALJ was supported by substantial evidence.

**E.  Appeals Council Erroneously Failed to Review New Medical Evidence**

McClain contends that the Appeals Council erroneously failed to review new medical evidence that was submitted by McClain after the date of the ALJ's decision, which was August 25, 2014. McClain appealed the ALJ's decision to the Appeals Council on October 27, 2014. (Tr. 22). In support of her request to the Appeals Council, McClain submitted medical records from Quality of Life, Dr. Victoria, and Gadsden Psychological Services that were dated and reflected examinations of McLain after the date of the ALJ's decision. (Tr. 2). On March 28, 2016, the Appeals Council denied her request for review of the ALJ's decision. (Tr. 1-4). In its decision, the Appeals Council stated that it had looked at these medical records, but because the ALJ had decided her case through

August 25, 2014 and this information was about a later time, it did not affect the decision about whether she was disabled beginning on or before August 25, 2014. (Tr. 2).

The Eleventh Circuit has made clear that "[w]ith few exceptions, the claimant is allowed to present new evidence at each stage of th[e] administrative [review] process[,]" including before the Appeals Council. *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1253, 1261 (11th Cir. 2007). While the Appeals Council has the discretion not to review the ALJ's denial of benefits, *Flowers v. Commissioner of Social Sec.,* 441 F. App'x 735, 745 (11th Cir. 2011), it "must consider new, material, and chronologically relevant evidence" submitted by the claimant. *Beavers v. Soc. Sec. Admin., Comm'r*, 601 F. App'x 818, 821 (11th Cir. 2015); *Ingram,* 496 F.3d at 1261*; see also* 20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence **only where it relates to the period on or before the date of the administrative law judge hearing decision**.") (emphasis added). Evidence is new only if it is not cumulative of other evidence in the record. *Beavers,* 601 F. App'x at 821. "The evidence is material if 'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id*. (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)); *see Mitchell v. Comm'r, Soc. Sec. Admin.,* 771 F.3d 780, 782 (11th Cir. 2014)). "It is chronologically relevant if 'it relates to the period on or before the date of the [ALJ] hearing decision.'" *Ring v. Berryhill,* 4:16-CV-42-VEH, 2017 WL 992174, *4 (N.D. Ala. Mar. 15, 2017) (quoting 20 C.F.R. § 404.970(b)).

Here, the Appeals Council incorporated the new evidence into the record and denied McClain's request for review (Tr. 1-7). Under the heading "What We Considered," the Appeals Council stated that "we considered the reasons you disagree with the [ALJ's] decision and the additional evidence listed on the enclosed Order of Appeals Council. … We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 2). The Appeals Council went on to state that it had "looked at" the new medical records and determined "that [the new evidence] does not affect the decision about whether [McClain was] disabled beginning on or before August 25, 2014" because "[t]his new information is about a later time. (*Id.*). The Appeals Council then advised McLain how to make a new claim with the new information. (*Id.*). McLain argues that the Appeals Council in this case erred because its statements do not demonstrate that it considered whether the submissions were chronologically relevant. (Doc. 25 at p. 10).

This Court cannot agree with McLain's argument because the Appeals Council clearly stated that it had looked at the new medical records submitted and concluded that the "new information is about a later time[;] [t]herefore, it does not affect the decision about whether you were disabled beginning on or before August 25, 2014." (Tr. 2). Similar language has been upheld by courts within the Eleventh Circuit. *See Beavers,* 601 F. App'x at 821-22 (finding that the Appeals Council's statement that it had considered the claimant's new evidence, but found that the new evidence did not provided a basis for changing the ALJ's decision was sufficient); *Zanders v. Berryhill,* CA 16-0542-MU, 2017 WL

3710790, *13-14 (S.D. Ala. Aug. 28, 2017) (affirming case in which the Appeal's Council used identical language to that used in the instant case); *Putman v. Colvin,* 2016 WL 5253215, *10-11 (N.D. Ala. Sept. 22, 2016) (affirming a case in which the Appeals Council, in addition to stating "this information does not provide a basis for changing the [ALJ's] decision[,]" also "went on to explain that the ALJ 'decided your case through March 31, 2013, the date you were last insured for disability benefits. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits.'"). Likewise, in *Mitchell*, the Appeals Council denied review, stating simply that it had considered the additional evidence but "the information did not provide a basis for changing the ALJ's decision." *Mitchell*, 771 F.3d at 782. The Eleventh Circuit explained that the Appeals Council's statement was sufficient because the record did not provide a "basis for doubting the Appeals Council's statement that it considered Mitchell's additional evidence." *Id*. at 783. The *Mitchell* panel noted that the Appeals Council "was not required to provide a detailed rationale for denying review." 771 F.3d at 784, 784-85 (noting that "our conclusion that the Appeals Council is not required to explain its rationale for denying a request for review is consistent with the holdings of other circuits that have considered this issue").

"The issue of whether a claimant's new evidence is new, material, and chronologically relevant is reviewed *de novo*." *Green,* 2017 WL 3187048, at *2 (citing *Washington v. Soc. Sec. Admin., Comm'r,* 806 F.3d 1317, 1320 (11th Cir. 2015). This Court, having reviewed the records from the few occasions in early

2013 that McLain was treated for depression, which were within the relevant time period, and the more voluminous records of her mental health complaints and treatment in late 2014 and beyond, which was after the relevant time period, agrees with the Appeals Council's implicit finding that the newly submitted records were not material and chronologically relevant. The new records simply do not provide any new, material, or relevant evidence demonstrating that McLain suffered from a disability as defined in the Act during the relevant time period.

## CONCLUSION

As noted above, it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. It is well-established that this Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. The Court finds that the ALJ's Decision that McClain is not entitled to benefits is supported by substantial evidence and based on proper legal standards. Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **28th** day of **September, 2017**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**